## Case No. 12,332.

### The SANTIAGO DE CUBA.

[4 Ben. 264.] [1]

District Court, E. D. New York. June, 1870. [2]

COLLISION AT SEA—STEAMERS CROSSING—LOOKOUT—LIGHTS—IMPERFECT SCREEN.

1. The propeller B. was going along the coast of New Jersey, heading south half west, with all her lights set, but having her side lights so imperfectly screened, that their rays crossed at her stem. She saw, off her port bow, and distant two or three miles, the white light, and

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Modified in Case No. 12,333.]

afterwards the green light of the steamship S. which, bound from Havre to New York, was running northwest by north. No material change of course was made by either vessel, till they were close together, when the B. ported, and the S. starboarded, and the vessels came together, the S. striking the B. abaft amidships on the port side, nearly at right angles: Held, that, in this position, it was the duty of the S. to avoid the B., and of the B. to keep her course as she did.

2. The burden was therefore on the S. to show that her omission to avoid the B. arose from some fault on the part of the B.

3. The condition of the screens on the B. was faulty.

4. The cause of the collision however, was not that defect in the screens of the B. but a negligent lookout on the S. by reason of which the lights of the B. were not seen, till the vessels were in close proximity, when the helm of the S. was starboarded.

5. The S. was therefore solely responsible for the collision.

These were four actions tried together. The first was brought by Jacob Lorillard, owner of the steamer Brunette, against the steamship Santiago de Cuba, the second by Henry Lyles, Jr., a shipper of cargo on board the Brunette, against the Santiago de Cuba, the third by Edward Murphy, also a shipper of cargo on the Brunette, against the Santiago de Cuba and Jacob Lorillard, and the fourth by the North American Steamship Company, owners of the Santiago de Cuba, against Jacob Lorillard. The actions arose out of a collision which occurred off Squam Inlet, on the night of February 1st, 1870, between the steamship Santiago de Cuba, a large steamer, of 1,600 tons burden, bound from Havre to New York, and the Brunette, a propeller of 200 or 300 tons burden, bound from New York to Philadelphia.

Man & Parsons, for the Brunette.

T. E. Stillman and Beebe, Donohue & Cook, for the Santiago de Cuba.

BENEDICT, District Judge. These are four cases, which have been tried together, and in which the court is called on to determine by whose neglect it was that these two steamers came together without slackening speed, on a clear starlight night, in an open sea, no other vessels being near to interfere with their movements.

On examining the testimony introduced to prove the various faults which these vessels charge upon each other, I find little contradiction as to many of the material facts.

It appears that the Brunette, at the time of the collision, was bound on her regular trip from New York to Philadelphia. From the Tavern Houses, her course down the coast was south half west, the proper course for that locality. She carried a white light and green and red side-lights burning brightly, and her master was on deck in charge of her navigation. The night was clear starlight, with a fresh breeze from the northwest, under which, with jib and spanker set, the propeller was steaming at the rate of nine or ten knots an hour.

When about off Squam Inlet, those in charge of the Brunette observed a white light off her port bow, and distant some two or three miles. Soon after, a green light was discerned, and it became apparent that a steamer was approaching the course of the Brunette, and having the propeller upon her starboard bow. The green light was examined by the master of the propeller with his glass, and her course then judged to be northwest by north. This proved to be correct. She was the Santiago de Cuba, bound from Havre to New York, then on a course northwest by north, running at a speed of six knots with all her lights set. No material change of course was made by either vessel until they were close upon each other, when the Brunette ported, and the Santiago starboarded, and immediately the vessels were in contact, the Santiago striking the Burnette on her port side, abaft midships, nearly at right angles, but standing a little forward on the Brunette. The Brunette sank almost instantly, only part of her crew saving their lives, and the Santiago was seriously injured.

These facts show that the course of the Santiago was such as to impose upon her the duty of avoiding the Brunette, while the duty of the latter was to hold her course, as she did. The burden is, therefore, upon the Santiago to show, that her omission to avoid the Brunette arose from some fault on the part of the latter. Several faults are charged upon the Brunette, of which the evidence requires me to consider here but a single one, and that relates to her side-lights. It is conceded that the propeller carried a white masthead light, and that she also had red and green side-lights in her fore-rigging, which were burning brightly; but it appears that the side-lights were so screened as to permit the rays to cross at the stem. She was a narrow vessel, it is true. Nevertheless her side-lights were improperly screened if they crossed at the stem, inasmuch as by this arrangement they would show across the bows immediately ahead, and the arc of the three lights, which is the arc of doubt, would be rendered too broad to enable a vessel approaching within a reasonable distance, to determine in time the course of the vessel from her lights.

It is accordingly claimed, in behalf of the Santiago, that the Brunette was seen off their starboard bow, showing a green light, from which those in charge of the Santiago were led to suppose that the course of the Brunette was south-southeast, and as the vessels were approaching with green to green, the Santiago was thereby misled into the belief that she was not called on to alter her course. This position, which is now relied on by the Santiago as the controlling feature of the case, is not very distinctly taken in her pleadings. While the averment that the lights of the Brunette were not properly set, is sufficient to permit proof of the condition of the screens, the general nature of the averments affords some ground for the argument that so much stress was not intended to be placed upon the defective screens, when the pleadings were drawn, as has been since done.

But I make no point upon the pleadings. The difficulty with the position is, that the evidence discloses the fact that the side-lights of the propeller, although burning brightly, were not seen at all by those in charge of the Santiago until the vessels were close together, and a collision imminent. A reference to the testimony of the witnesses produced by the Santiago will make this apparent. Thus Cornelius, who was the officer in charge of the deck of the Santiago, and to whose testimony, respecting what was seen and done on his own vessel, the owners of the Santiago cannot object, says that when he saw the green light, he ordered his wheel hard a-starboard; and his evidence, as well as that of the wheelsman who obeyed the order, shows that the vessels were in contact by the time the order was executed. He also says that he gave no signal whatever to the engineer before the vessels struck, which tends to show a sudden consciousness of the immediate presence of an approaching vessel.

If the officer in charge of the Santiago had noticed the Brunette over his starboard bow three miles off, as he says, and upon a southsoutheast course, it is not probable that she could have drawn so near him as to show her hull, without causing him to slack his speed. If, as the wheelsman and others of the witnesses say, the Brunette, when seen, bore about north, and was supposed to be on a south-southeast course, the fact that she neared the Santiago at all was sufficient to put the officer of the deck on his guard. The proximity of the vessels to each other is also indicated by the evidence of the wheelsman, that when he observed the Brunette's green light, the vessels were about to cross courses immediately. Further, the wheelsman says that he saw the hull of the Brunette before he received the order, which the officer of the deck says he gave when he saw the green light. Of course, the vessels were close together when the hulls could be seen. These statements, added to the significant omission to call out, from either of the seamen who were forward, any testimony calculated to show the distance run, or time which elapsed after they saw the Brunette before the collision, coupled with the statement made in the pleadings of the Santiago, that the green light was seen when her helm was starboarded, and about or just before the time the Brunette's helm was ported, at which time the vessels were within 75 or 100 yards of each other, constitute a strong body of testimony adverse to the position that seeing the green light of the Brunette led to the omission of any effort on the part of the Santiago to avoid her. The

truth undoubtedly is, that the Brunette's lights were not discovered at all until close at hand. This is not only shown by the evidence already referred to in regard to the green light, but by the conceded fact that the red light of the Brunette was not seen until she was near by. This port light was burning brightly, and capable of being seen at a long distance. The course of the Brunette was such as to display it to the Santiago, and yet it was not seen until the last moment. An attempt has been made to account for this circumstance by the suggestion that the light was hid by the jib, until opened by the sharp sheer of the propeller at the last moment. No witness states that the jib hid the light, which was upon the outside of the fore-rigging, and I am not able to determine from any evidence in the case that, with the wind northwest, and course south half west, the jib would hide the port light from the observation of a vessel approaching three points on the port bow. In this connection, it is worthy of remark that the pleadings of the Santiago aver that the red light was never seen, and so the officer of the deck testified when first upon the stand, but when recalled by the court, he said very positively that the red light was seen, after he saw the green light, and that it was when he saw the green light that he gave the order to hard a-starboard. The wheelsman, who does not agree with the officer as to the number of orders given, says that seeing the red light was the occasion of the order hard a-starboard.

These observations respecting the testimony of the witnesses produced by the Santiago indicate the view which I take of this case. I consider it beyond reasonable doubt that the cause of the collision was the failure of those in charge of the Santiago to discover in time the course of the Brunette.

The position and course of the Santiago made it incumbent on her to keep the most careful watch for vessels, across whose courses she was known to be running. The Brunette might have been seen at a long distance, and if she had been, and due attention had been paid to her, the impression stated in the pleadings, that she was running south-southeast, would have been at once corrected. For no matter what lights she showed, being seen about north—three points on the starboard bow, her bearing, as she came on, would in a very short distance, indicate that she was not running to east of south, but to west of south, as she was in fact. In that locality a steamer approaching from the starboard, would naturally be supposed to be upon a course south by west, and I cannot suppose that any officer seeing a steamer two miles off his starboard bow, showing a green light, and which he supposed was running south-southeast, would see her draw in ahead, and close to him, and yet keep up his speed.

The evidence shows why the Santiago neither slackened speed, nor changed her course. The Brunette was not noticed until the vessels were close together, and there was no time to stop, to hail or to do anything with proper consideration. I do not therefore take time to discuss other features of this case, which have presented themselves in my study of the evidence, for I consider its controlling feature to be, the failure of those in charge of the Santiago, to discover the course of the Brunette in time to avoid her; and I cannot doubt that if as vigilant a watch for approaching vessels, had been kept by the officer in charge of the Santiago, as was kept by the master of the Brunette, and as the position of the Santiago demanded, the course of the Brunette would have been discovered, and she would have been easily avoided. For this neglect she must be held to be solely responsible for the damages which resulted.

In the action of Edward C. Murphy, libellant, therefore let the libel against the owners of the Brunette be dismissed, and a decree entered against the Santiago de Cuba. In the actions of Henry Lyles, and of Jacob Lorillard, let the decrees be for the libellant, and in the action of the North American Steamship Company, let the libel be dismissed.

[NOTE. The owners and the mortgagee of the steamship Santiago de Cuba appealed from this decree. The circuit court held that both the Brunette and the Santiago de Cuba must contribute to the whole loss, and that if, upon the ascertainment of the whole loss, the contribution due from the Santiago de Cuba to the fund, over and above her own loss, should be sufficient to indemnify the owner of the cargo of the Brunette, it should be applied to that purpose. If not, then the parties should be heard on the question by whom, if by any one, the deficiency should be made good. Case No. 12,-333.]